UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES<br>v.<br>MICHAEL MAHONEY,<br>        Defendant. | No. 25-cr-10238-DJC |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Michael Mahoney stands before this Court convicted of transmission of an interstate threat in violation of 18 U.S.C. § 875(c). As described in detail in the Presentence Investigation Report ("PSR"), on March 28, 2025, the defendant called the relative of a prominent federal official. After confirming the relative's identity, the defendant screamed that he was going to murder the relative, the relative's spouse, and the prominent federal official (by name). The defendant later confirmed that he made the phone call because he wanted to scare people

The defendant's crime is incredibly serious. Though he did not carry out an act of violence, his actions have a monumental impact on our society. Balanced against this consideration is the defendant's status as a first-time offender and the fact that he only made one threat. Ultimately, the government recommends a sentence of six months home detention and a fine of $20,000. This sentence reflects the seriousness of the offense and is sufficient, but not greater than necessary, to promote respect for the law, provide just punishment to the defendant, and adequately deter the defendant and others from committing similar crimes.

*The Sentencing Guidelines Calculation*

According to the PSR, the defendant's base offense level is 12. PSR, ¶ 20. The defendant's offense level is reduced by two-levels because he qualifies for the Zero-Point Offender reduction. PSR, ¶ 26 The Defendant's offense level is further decreased by two-levels because he has

accepted responsibility for his crime. PSR, ¶ 26. Probation determined that the Defendant's total offense level is 8. PSR, ¶ 33. The government disagrees with this calculation. Specifically, pursuant to USSG § 3A1.2(b), the defendant's offense level should be increased by six-levels because the victim was both a government officer or employee (the prominent federal official) and a member of the immediate family of a prominent federal official (the relative) at the time of the threat and the threat was motivated by that status. PSR, ¶ 22; *see United States v. Davila-Bonilla*, 968 F.3d 1, 10-11 (1st Cir. 2020) (applying enhancement where threats were motivated by probation officer's status as government employee). "A defendant may be said to be motivated by a victim's status as a government employee when that status has influenced the defendant's choice to commit the crime." *United States v. Chandler*, 104 F.4th 445, 458 (3d Cir. 2024) (internal marks and citation omitted). "As long as official status was one motivation for the crime, the enhancement applies." *United States v. Feeback*, 53 F.4t 1132, 1135 (8th Cir. 2022).

      The defendant had never personally met or interacted with the relative, the relative's wife, or the prominent federal official before he threated to murder them. The defendant was "crushed" by the outcome of the last presidential election and had a "strong distaste for the new presidential administration." PSR ¶ 52. According to the defendant, he committed the offense after becoming "incessantly occupied by political shows on television and was actively writing about the political situation on social media." *Id*. He felt "pain was being inflicted…by the government that was responsible for the wellbeing of a nation." *Id*.

      It is fair to say that the defendant's specific motivation for making the threat is unknown. But the relevant question is not the defendant's policy rationale in making a threat but rather his motivation for selecting the victims at issue. There is no evidence that he did so based on a commercial dispute, a personal grievance, or a mistake. Instead, he did it because he was upset

about the policies of the new administration, was engaged in an unhealthy political fixation, and was experiencing deteriorating personal circumstances. Whether he was upset by a specific bill, executive order, or policy statement is irrelevant. So long as his actions were motivated, at least in part, by the official status of the victims, the enhancement is applicable. Here, it plainly is.

With the enhancement, the defendant's total offense level will be 13. Specifically, the six-level enhancement under 3A1.2(b) will also render him eligible for an additional reduction under 3E1.1(b). Accordingly, the defendant's guideline sentencing range would be 12-18 months and fall within Zone C of the Sentencing Table. The fine range is between $5,500 to $55,000 and the defendant has assets that would enable him to pay a fine. USSG ¶ 5E1.2

### *The Government's Recommendation*

The Supreme Court has directed federal trial courts to initially calculate the appropriate sentencing range under the advisory Sentencing Guidelines. *Gall v. United States*, 552 U.S. 38, 41 (2007). The Sentencing Guidelines, the Supreme Court has acknowledged, are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Id.* at 46. Therefore, "[a]s a matter of administration and to secure nationwide consistency, the Sentencing Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. *Id.* at 49. Given the Sentencing Commission's important institutional role and expertise, the GSR often will "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *United States v. Kimbrough*, 552 U.S. 85, 89 (2007) (internal quotations omitted); *see also United States v. Martin*, 520 F.3d 87, 91 (1st Cir. 2008) (holding that "a major deviation from … [the guidelines] must be supported by a more significant justification than a minor one"). The starting point, therefore, is the GSR of 12-18 months. From that point, the Court must consider the statutory factors set forth

in 18 U.S.C. § 3553.

The defendant's actions were violent. Though he used words, not physical force, his threat was serious and terrifying. He threatened to murder the brother of the prominent federal official, his spouse, and the prominent federal official. While being a public official necessarily means losing some level of privacy one expects as a private citizen, it does not mean that those who hold public office should be subject to harassment or violent threats. Nor should their family. Criticism is one thing, but violent threats cannot be tolerated. Indeed, the rationale behind 3A1.2(b) is that targeting a public official because of their official status warrants a more serious sentence.

The government recognizes that the defendant has submitted significant mitigation evidence regarding his personal circumstances. However, a probationary sentence is simply insufficient to satisfy the statutory purposes of sentencing. It imposes no real cost on conduct that is unfortunately becoming prevalent in our society. Public servants should be able to work without fear for their safety and a sentence of probation fails to hold the defendant accountable for actions that are antithetical to the core values of the United States. At minimum, a period of home detention is warranted as well as a sizable fine to punish the conduct and deter others from similar crimes in the future. The government recommends a sentence of six months home detention and a fine of $20,000. This sentence is the minimum necessary to satisfy the statutory purposes of sentencing. The special conditions recommended by the probation office would satisfy concerns articulated by the victims in this case, specifically, that the defendant have no contact, direct or indirect, with the victims of the offense and that he participate in a mental health treatment program as directed by probation.

## CONCLUSION

For the reasons set forth above, the government respectfully asks the Court to impose a sentence of six months home detention and a fine of $20,000.

                                                  Respectfully submitted,

                                                  LEAH B. FOLEY
                                                  United States Attorney

By:    */s/ Jared C. Dolan*
        JARED C. DOLAN
        Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 7, 2026

                                                  */s/ Jared C. Dolan*
                                                  JARED C. DOLAN
                                                  Assistant U.S. Attorney